IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUPPLYONE, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-3811 |
| | : | |
| TRIAD PACKAGING, INC., et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                 **July 24, 2014**

      Plaintiff SupplyOne, Inc. (SupplyOne), brings this action against Defendants Triad Packaging, Inc. (Triad), Louis Wetmore, and Durham Box Company (Durham), alleging the Defendants breached an Asset Purchase Agreement (APA) by failing to indemnify SupplyOne for attorneys' fees and costs it incurred as a result of Defendants' previous breaches of the same APA. The underlying APA breaches were litigated to final judgment in the United States District Court for the Western District of North Carolina. *See Triad Packaging, Inc. and Louis Wetmore v. SupplyOne, Inc., v. Durham Box Co.*, No. 10-CV-005 (W.D.N.C. Jan. 28, 2010) (North Carolina Action). Defendants in this action have moved to dismiss the Amended Complaint (Complaint). Because this Court finds res judicata applies to bar SupplyOne's breach of contract claim, it will grant Defendants' motion to dismiss.

**BACKGROUND**[1]

      SupplyOne, Triad, Durham, and Wetmore (the president and majority shareholder of Triad and Durham) entered into the APA on October 8, 2008. In the APA, SupplyOne agreed to purchase the assets of Triad and Durham. In December 2009, Defendants sued SupplyOne in

---

[1] The following facts are taken from the Complaint, the APA attached thereto, and publicly available documents from the proceedings in the Western District of North Carolina.

North Carolina state court alleging SupplyOne had breached the APA and asserting various tort-based claims related to the APA.  After removing the action to federal court, SupplyOne counterclaimed, alleging Defendants had breached the APA, "damaged SupplyOne in an amount in excess of $500,000—and forced SupplyOne to incur attorneys' fees related to this lawsuit." Defs.' Mot. to Dismiss Ex. 4, at 25 (SupplyOne's counterclaim).  The counterclaim also alleged that the APA provides for the payment of attorneys' fees as part of the indemnification for damages stemming from a breach of the agreement, *see id.* at 28 ¶ 172, an allegation incorporated by reference into SupplyOne's breach of contract claim.  *See id.* at 29 ¶ 169.[2]  In SupplyOne's prayer for relief, it asked the district court in North Carolina to "award damages in an amount to be determined at trial, award attorneys['] fees, costs, and other professional expenses . . . pursuant to Section 10 of the APA." *Id.* at 30.

The North Carolina Action proceeded to a jury trial, and in May 2013, the federal jury found Defendants had breached Sections 2.7(a) and 2.7(b) of the APA by their actions in May 2009.  After the verdict, the parties filed post-trial motions, including competing motions for judgment as a matter of law under Federal Rule of Civil Procedure 50 and corresponding motions for entry of judgment pursuant to Rule 54(b).  The district court denied all of the post-trial motions in a memorandum and order dated September 26, 2013.  The same day, the court entered a final order and judgment consistent with the jury verdicts and the memorandum and order denying the post-trial motions.  Although SupplyOne had requested an award of attorneys' fees pursuant to Section 10 of the APA in its counterclaim, it did not present any evidence regarding attorneys' fees during trial or raise the attorneys' fees and indemnification issue via a

---

[2] Citations to the allegations in the counterclaim include both the page and paragraph numbers because SupplyOne's pleading contains formatting errors resulting in several different paragraphs labeled with the same paragraph number.

post-trial motion.  Rather, on July 1, 2013, SupplyOne filed this action in the Eastern District of Pennsylvania, asserting a single claim: that "Defendants breached the APA by failing to indemnify SupplyOne for attorneys' fees related to Defendants' May 2009 breach of contract, as required by the APA's indemnification provision."  Compl. ¶ 26.

Section 10.1 of the APA requires Defendants to indemnify SupplyOne for "any and all Damages" that SupplyOne may sustain, suffer, or incur resulting from or relating to a breach of the APA.  APA § 10.1.  "Damages" is defined in the APA as including "reasonable attorneys', consultants' and other professional fees . . . incurred by a party that is entitled to indemnification under this Agreement."  APA § 1.  Section 10.3 sets forth certain procedures for seeking indemnification.  The party seeking indemnification shall provide a "Claim Notice" to the party alleged to be responsible for indemnification.  APA § 10.3(a).  If the matter to which the indemnification claim relates has not yet been resolved, the party seeking indemnification is to provide an estimate of the claim, defined as an "Unliquidated Claim."  *Id.*  Any party providing a Claim Notice for an Unliquidated Claim must follow up with a second Claim Notice within sixty days after the matter giving rise to the claim is resolved, which specifies the amount of the claim. This second Claim Notice is defined in the APA as a "Liquidated Claim Notice."[3]

On January 29, 2010, shortly before filing its counterclaim in the North Carolina Action, SupplyOne served Defendants with a Claim Notice for an Unliquidated Claim, "informing Defendants of their indemnification obligations under the APA for attorney's fees and costs related to their breach of the APA."  Compl. ¶ 18; *see also* Defs.' Reply Ex. A (Unliquidated Claim Notice stating "[b]y (1) continuing to breach covenants under Section 2.7 and Section 7 of

---

[3] The APA does not set forth any particular consequences for failing to abide by this procedure, nor does it suggest that an indemnification right only materializes upon serving a Liquidated Claim Notice.

the Agreement and (2) filing the [North Carolina Action], Mr. Wetmore and Triad are damaging SupplyOne by *inter alia* forcing the company to incur attorneys', consultants', and other professional fees and costs that are anticipated to exceed $150,000. Pursuant to Section 10.3(a) of the Agreement, SupplyOne hereby demands indemnification for these damages."). On July 1, 2013, the same day the instant lawsuit was initiated, SupplyOne served Defendants with a Liquidated Claim Notice for $624,384 in fees and costs it had incurred to that point in connection with the North Carolina Action. On July 16, 2013, Defendants sent SupplyOne a "Claim Response" notifying SupplyOne they would not indemnify it for its claimed damages.

Defendants have now moved to dismiss the Complaint, arguing SupplyOne's claim for breach of the indemnification provision and the $624,384 in damages it seeks should be dismissed as barred by the doctrine of res judicata, also known as claim preclusion.[4]

**DISCUSSION**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based

---

[4] Defendants also argue the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over the Defendants, and under Rule 12(b)(6) because the Complaint fails to state a claim under North Carolina law and SupplyOne's claim is barred by the statute of limitations. The Court need not address these additional arguments because it finds dismissal is appropriate on res judicata grounds. *See Sinochem Int'l. Co. Ltd. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits."); *see also Graboff v. Am. Ass'n of Orthopaedic Surgeons*, No. 13-2549, 2014 WL 1045686, at *1 (3d Cir. Mar. 19, 2014) (affirming dismissal on res judicata grounds despite personal jurisdiction challenge and noting res judicata dismissal does not require court to reach merits); *Gonzalez-Cifuentes v. I.N.S.*, 253 F. App'x 173, 175 (3d Cir. 2007) (affirming dismissal on res judicata grounds despite subject matter jurisdiction challenge).

4

upon [those] documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Affirmative defenses that are apparent from the face of the complaint, including claim preclusion, may be raised in a 12(b)(6) motion. *See Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008) (district court may dismiss a complaint based on an affirmative defense established by the complaint and judicially noticeable information).

Defendants and SupplyOne agree that the preclusive effect of a prior judgment should be decided pursuant to the law of the court that issued the judgment, and if the judgment was issued by a federal court, the applicable federal law of the issuing jurisdiction should control. *See Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999) ("[T]he preclusive effect of a judgment is determined by the preclusion law of the issuing court—in this case, a federal court."). The choice of law question, however, is not as clear cut as the parties contend. After the Third Circuit decided the *Paramount* case, the United States Supreme Court held that while federal common law controls the preclusive effects of a federal diversity judgment, the federal common law directs application of the law that would be applied by the courts of the state in which the federal court rendered judgment, unless the state law is incompatible with federal interests. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *see also Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." (citing *Semtek*, 531 U.S. at 508)). *Semtek* involved the preclusive effect of a judgment by a federal court sitting in diversity on a subsequent state court action, but many courts of appeals have interpreted *Semtek*'s rule as applying in successive diversity cases. *See, e.g.*, *Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 44 (1st Cir. 2012) (collecting cases). As applied in this case, *Semtek*

5

directs the application of North Carolina preclusion rules unless the state rules are incompatible with federal interests.

Under both North Carolina state law and federal law as applied in the Fourth Circuit, claim preclusion will bar claims that were or could have been raised in a prior action if three elements are satisfied. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004); *Gaither Corp. v. Skinner*, 85 S.E.2d 909, 911 (N.C. 1955). There must be "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel*, 369 F.3d at 354-55; *Moody v. Able Outdoor, Inc.*, 609 S.E.2d 259, 262 (N.C. Ct. App. 2005). When considering the second element, however, the federal and state rules slightly diverge. The North Carolina Supreme Court has adopted a narrower version of the "transactional test" used in federal courts to determine whether there is an identity of the earlier and later causes of action for claim preclusion purposes. *See Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 391 (M.D.N.C. 2004) ("North Carolina courts have employed a 'cautious and flexible adoption' of the 'transactional' test and construe the res judicata bar more narrowly than most federal and state courts." (citing *Davenport v. N.C. Dep't. of Transp.*, 3 F. 3d 89, 95 (4th Cir. 1993))). As discussed below, despite this difference, the application of either test would produce the same result in the circumstances presented by this case. The Court will therefore apply North Carolina state law without deciding whether its preclusion principles are incompatible with any federal interest.[5]

---

[5] The Court notes there is reason to believe that this case implicates the significant federal interest in the effective administration of justice in the federal court system. Both of the courts to consider the claims at issue are federal courts, and as the Second Circuit has recognized, "[o]ne of the strongest policies a court can have is that of determining the scope of its own judgments." *Kern v. Hettinger*, 303 F.2d 333, 340 (2d Cir. 1962). Many courts of appeals, including the

The first and third elements that must be satisfied for res judicata to apply are not in dispute. Although this action was filed shortly before the district court entered final judgment closing the North Carolina Action, no finality issue remains because the district court has since entered final judgment. *See Pure Distribs., Inc. v. Baker*, 285 F.3d 150, 157 (1st Cir. 2002) ("[I]f final judgment is entered in the [first] action during the course of this case, nothing in our opinion should be construed to prevent [the defendant] from renewing his res judicata arguments."). Moreover, although the North Carolina Action is currently on appeal, "it has become clear in the federal courts that res judicata ordinarily attaches to a final lower-court judgment even though an appeal has been taken and remains undecided." 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4427 (2d ed. 2002) (hereinafter Wright & Miller).[6] As to the third element, the four parties in the North Carolina Action are the same four parties in this action.

In its opposition to Defendants' motion to dismiss, SupplyOne argued only that because its breach of contract claim could not have been raised in the North Carolina Action, claim preclusion should not apply. *See* Mem. in Opp'n to Defs.' Mot. to Dismiss 7 (arguing res

---

Third and Fourth Circuits, have recognized this important federal interest in concluding prior to *Semtek* that federal preclusion law applies in successive diversity cases. *See In re Kaplan*, 143 F.3d 807, 815 n.15 (3d Cir. 1998) (collecting cases including *Shoup v. Bell and Howell, Co.*, 872 1178, 1179 (4th Cir. 1989)); *accord Aerojet-Gen. Corp. v. Askew*, 511 F.2d 710, 717 (5th Cir. 1975) ("We see no persuasive reason to look to state law for some elements of res judicata, such as the scope of the cause of action or similarity of the parties, in light of the prominent influence of federal law on other elements of the doctrine. To do so would sacrifice the uniformity of the law which federal courts must apply."). As such, if North Carolina's narrower transactional test required reaching a different result when ruling on this motion, the exception articulated in *Semtek* could be invoked to apply the broader federal preclusion rule that would otherwise bar SupplyOne's claim.

[6] Although this Court has been unable to locate a North Carolina precedent addressing the pending-appeal issue as a matter of state preclusion law, the parties do not dispute the requisite finality is present, and this Court will assume North Carolina courts would apply the prevailing federal rule.

judicata applies only to issues that "were or could have been raised" in the prior action (citing *Pueschel*, 369 F.3d at 354)). SupplyOne advanced this argument as a stand-alone basis for rejecting the claim preclusion defense, but the Court understands it to be grounded in the second element of the res judicata analysis, *i.e.*, that the causes of action in the first and second suits are not identical because SupplyOne could not have brought its indemnification claim in the first. *See, e.g.*, *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) ("Newly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action."). Before addressing whether SupplyOne could have brought the indemnification claim in the North Carolina Action, however, the Court must determine whether "the claim presented in the new litigation arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Id.* (citation and internal quotation marks omitted).

SupplyOne's instant breach of contract claim is based on the same contract (the APA) that the parties accused each other of breaching in the North Carolina Action. Even under the North Carolina Supreme Court's narrower view of the transactional test applied by the federal courts, if two causes of action are premised on the same underlying contract, the second element is satisfied and claim preclusion will apply. *See Gaither*, 85 S.E.2d at 912 (holding an identity of causes of action exists when the second action is for damages resulting from a separate breach of the same contract at issue in the first action).[7] Not only are the claims in the first and second

---

[7] The North Carolina Supreme Court rejected the broad transactional test in *Bockweg v. Anderson* when considering two different instances of negligence leading to two different injuries. 428 S.E.2d 157, 162 (N.C. 1993). When doing so, the court took care, however, to distinguish *Gaither*, the North Carolina precedent cited above. *See id.* In factually distinguishing the case, the North Carolina Supreme Court left undisturbed *Gaither*'s holding that "for [a] breach of an entire and indivisible contract only one action for damages will lie." *Gaither*, 85 S.E.2d at 912; *see also Bockweg*, 428 S.E.2d at 162. Since *Bockweg*, North Carolina

actions based on a single indivisible contract, SupplyOne did in fact seek, through its counterclaim in the North Carolina Action, the very relief it now seeks from this Court under the same indemnification provision of the same contract. Under North Carolina preclusion law, "a judgment is conclusive as to all issues raised by the pleadings." *Bockweg*, 428 S.E.2d at 161 (citation and internal quotation marks omitted). Because SupplyOne raised the indemnification claim now before this Court in its pleadings in the North Carolina Action, it must be considered as having been a part of the North Carolina Action. *See also AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 74 (2d Cir. 2003) (holding res judicata barred a "contractual indemnification claim" asserted in subsequent action where indemnification rights under the same agreement were mentioned but not explicitly pleaded as an alternative breach of contract

---

courts have found that prior judgments based on claims arising under a single contract preclude later claims that could have been raised in the earlier suit. *See, e.g.*, *Moody*, 609 S.E.2d at 263; *Holly Farm Foods, Inc. v. Kuykendall,* 442 S.E.2d 94, 97-98 (N.C. Ct. App. 1994).

Although this Court has not found a North Carolina case addressing a factually similar situation, at least one federal appellate court has determined that a claim for attorneys' fees sought pursuant to an indemnification provision triggered by a breach of the same contract "cannot be enforced apart from the claim for breach . . . and to this extent we have only a single claim here." *Aetna Cas. & Sur. Co. v. Giesow,* 412 F.2d 468, 470 (2d Cir. 1969). In addition, claims for attorneys' fees, whether triggered by contract or statute, are generally considered a part of the same cause of action as the underlying liability question. *See, e.g.*, *Rooney v. United States*, 694 F.2d 582, 583-84 & n.4 (9th Cir. 1982) (barring a subsequent action for attorneys' fees on res judicata grounds and finding "[a] claim against an adverse party for attorney's fees incurred in the prosecution of a substantive claim is part of the same cause of action as that underlying the substantive claim"). In *Rooney*, a claim for attorneys' fees had been made and rejected in the original proceeding, but the court found that even if the claim had not been advanced then, it would be merged in the judgment and foreclosed. *Id.*; s*ee also Dryvit Sys., Inc. v. Great Lakes Exteriors, Inc.*, 96 F. App'x 310, 312 (6th Cir. 2004) (finding a separate action for attorneys' fees pursuant to a contract barred by res judicata); *Taylor v. Ill. Tool Works, Inc.*, 116 F. App'x 115, 117 (9th Cir. 2004) (same).

claim in the prior action). For these reasons, the cause of action before this Court is part of the same cause of action that was litigated in the North Carolina Action.[8]

Defendants maintain that SupplyOne not only could have brought this claim in the North Carolina Action, it did. While it is true that the instant indemnification claim was in fact raised in SupplyOne's counterclaim, and also formed a part of SupplyOne's prayer for relief, the jury verdict and the final judgment entered in the case do not reflect direct resolution of the attorneys' fees/indemnification claim. SupplyOne does not appear to have pursued its indemnification claim to resolution in North Carolina, and instead abandoned the claim before it was litigated to a final judgment on the merits. SupplyOne's later abandonment of the claim, however, has no effect on whether res judicata should apply. Claim preclusion is not limited to those claims that were actually litigated in the prior action; it also extends to "other matters which in the exercise of due diligence could have been presented for determination in the prior action." *Gaither*, 85 S.E.2d at 911; *see also Bockweg*, 428 S.E.2d at 161 ("[T]he prior judgment serves as a bar to the relitigation of all matters that were or should have been adjudicated in the prior action."); *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 319 (4th Cir. 2002) ("[T]he fact that Orca's counterclaim was not actually litigated in Florida does not affect our decision to grant Mollicam's motion to dismiss [the appeal on res judicata grounds.]").

---

[8] Although not addressed by the parties, Federal Rule of Civil Procedure 13(a), which governs compulsory counterclaims, would also serve to bar the instant action. Even if SupplyOne did not raise the indemnification claim as a counterclaim in the North Carolina Action, such a claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a); *see also Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 391 (3d Cir. 2002) (noting the "close connection between Rule 13(a) and the doctrine of claim preclusion"); *Gaither*, 85 S.E.2d at 911 (finding "a party defendant who interposes only a part of a claim by way of recoupment, setoff, or counterclaim is ordinarily barred from recovering the balance in a subsequent action").

SupplyOne primarily argues its claim should not be precluded because the claim was not ripe and therefore could not have been pursued during the pendency of the North Carolina Action. SupplyOne maintains the instant breach of contract claim only ripened when SupplyOne served Defendants with the Liquidated Claim Notice on July 1, 2013, triggering Defendants' obligation to indemnify SupplyOne for the attorneys' fees it had incurred in the North Carolina Action.[9] This argument is insufficient to withstand a motion to dismiss for two reasons. First, SupplyOne's breach of contract claim for failure to indemnify was never dismissed in North Carolina for lack of subject matter jurisdiction and it is implausible to suggest that the claim would have been dismissed had SupplyOne pursued it. Second, even if, as SupplyOne contends, its claim only ripened in July 2013, the claim still could have been raised at that time in the North Carolina Action, prior to the entry of final judgment in that case.

If a claim is dismissed for lack of subject matter jurisdiction on the basis that it is not ripe, the dismissal does not serve as an adjudication on the merits and res judicata will generally

---

[9] SupplyOne also suggests the breach of contract claim only ripened on July 16, 2013, when Defendants formally refused to indemnify SupplyOne, thereby breaching the contract. If that were true, SupplyOne's claim was not yet ripe when it filed the complaint in this Court on July 1, 2013, and could be dismissed on that basis. *See Luis v. Dennis*, 751 F.2d 604, 608 (3d Cir. 1984). More fundamentally, however, the fact that SupplyOne sued Defendants before it received a Claim Response generally illustrates the hollowness of its ripeness arguments. Leaving aside the timing of this lawsuit, the record in the North Carolina Action indicates that SupplyOne knew well before July 2013 that an actual controversy regarding the indemnification provision existed, and no formal Liquidated Claim Notice or formal Claim Response pursuant to Section 10.3 of the APA was necessary for the claim to ripen. As Defendants' reply to SupplyOne's counterclaim (filed on March 23, 2010) makes clear, Defendants had no intention of indemnifying SupplyOne for attorneys' fees pursuant to Section 10 of the APA. *See* Reply to Counterclaim ¶ 172 ("[Defendants] expressly represent and allege that the referenced [indemnification] provision was drafted by [SupplyOne] and is not enforceable according to North Carolina law, which law is to be applied to this litigation and the referenced APA."); *see also* Oral Arg. Tr. 17, Dec. 9, 2013, (counsel for SupplyOne stating that "by the time we got to trial [in the North Carolina Action], there were no agreements [between] the parties on both sides as to anything").

not bar reassertion of the claim in a second action. *See St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000) (holding claims for indemnification and contribution that were dismissed as unripe in a prior action were not precluded by that judgment in a second action); Wright & Miller § 4437 ("In ordinary circumstances a second action on the same claim is not precluded by dismissal of a first action for prematurity or failure to satisfy a precondition to suit."). Where "formal barriers" to presenting a claim, such as a lack of subject matter jurisdiction, "in fact existed and were operative . . . in the first action," it would be unfair to preclude the claim in a second action. Restatement (Second) of Judgments § 26, cmt. c.; *id.* § 20 (stating exceptions to the general rule of bar).[10]

No such barriers in fact existed or were operative in the North Carolina Action. The district court did not dismiss the instant indemnification claim as unripe; rather, SupplyOne chose not to pursue its indemnification claim in the North Carolina Action. Where a party fails to pursue a particular claim it may have had in a prior action, res judicata still applies. *See Ballance v. Dunn*, 385 S.E.2d 522, 525 (N.C. Ct. App. 1989) ("The procedural history of the case below demonstrates that plaintiff [chose] not to have all [his] claims adjudicated in the prior lawsuit. The doctrine of res judicata estops [him] from litigating any of those claims in a second lawsuit."); *Hatch*, 699 F.3d at 45 ("It is axiomatic that claim preclusion doctrine requires [a party] to live with [its strategic] choices." (citation and internal quotation marks omitted)); *Taylor*, 116 F. App'x at 117 (barring second suit for attorneys' fees pursuant to a contract

---

[10] *See also* Restatement (Second) of Judgments § 21(2) & cmt. b. (noting that where judgment on a counterclaim is rendered in favor of the defendant but she is unable to obtain full recovery "because the law imposes a limitation on the authority of the court to render such a judgment," the defendant is not precluded from subsequently maintaining an action for the balance due on the claim stated in the counterclaim).

12

provision and noting plaintiff "brought his claim for attorneys' fees in the first suit, but for strategic purposes chose not to pursue it").

SupplyOne has not cited to, and this Court has not found, any language in the APA's text supporting the argument that the contractual obligation to indemnify SupplyOne for attorneys' fees only ripened when SupplyOne served Defendants with a Liquidated Claim Notice. To be sure, Section 10.3(a) does set forth certain procedural requirements to be followed by a party seeking indemnification, but it does not state or otherwise suggest that an indemnification right does not materialize until those requirements are fulfilled.[11] Rather, the provision in the APA which gives rise to the indemnification right at issue is found in Section 10.1, which states that

---

[11] Section 10.4 of the APA illustrates that if the parties intended that an indemnification claim under Sections 10.1 and 10.3 would only mature upon service of a Liquidated Claim Notice, the APA would have specified as much. Section 10.4 states that certain procedures must be followed "or the claim under this Section 10 shall be invalid." APA § 10.4. This Court sought supplemental briefing to determine the impact of Section 10.4 on SupplyOne's indemnification claim because Section 10.4 appeared to invalidate any indemnification claim that is not liquidated within thirty months of serving an Unliquidated Claim Notice. SupplyOne explained that its claim was not governed by Section 10.4 because Section 10.4 only applied to breaches of representations and warranties. SupplyOne's claim was for Damages related to breaches of *covenants* under Section 2.7, a subject governed by Section 10.1, but not Section 10.4. *Compare* APA § 10.1 (providing indemnification right for a "breach of or any inaccuracy in any representation, warranty, covenant or agreement of the [Defendants] contained in this Agreement"), *with* APA § 10.4 (placing procedural requirements on "[a]ny claim for indemnification under this Section 10 for a breach of a representation or warranty").

Neither Section 10.1 nor 10.3 includes a proviso like the one in Section 10.4 stating that an indemnification claim will be invalid for failure to follow procedural requirements. Nor does Section 10.3 state that an indemnification claim will only become valid after a Liquidated Claim Notice has been served. SupplyOne is a sophisticated party asserting a right under a complex and highly negotiated Asset Purchase Agreement it (now) claims is governed by Delaware law. Thus, in accordance with the contract interpretation principles SupplyOne argues govern this contract, this Court will not read terms into the APA that the parties did not supply. *Cf. Eurofins Panlabs, Inc. v. Ricerca Biosciences*, *LLC*, No. 8431-VCN, 2014 WL 2457515, at *4 (Del. Ch. May 30, 2014) ("Defendants also urge the Court to dismiss the Complaint because it does not explicitly state that Eurofins provided notice which complied with the [asset purchase agreement's] notice requirements. Again, no provision in the [agreement] requires this result and the Court will not re-write the contract to impose such a requirement."); *Ehrenstrom v. Phillips*, 77 A. 81, 84 (Del. Ch. 1910) ("[T]his court will not make a new contract, or supply terms not theretofore agreed upon by the parties.").

Defendants are obligated to indemnify SupplyOne "from and against any and all Damages . . . that result from, arise out of or relate to . . . any breach of or any inaccuracy in any representation, warranty, covenant or agreement of the [Defendants] contained in this Agreement."  APA § 10.1.  Defendants breached the APA in May 2009, and SupplyOne has had a mature indemnification right since that time.  *See Carolina Power & Light Co. v. Dynegy Mktg. & Trade*, 415 F.3d 354, 357 (4th Cir. 2005) (stating where a contract provided for legal costs incurred "by reason of the enforcement and protection of [a party's] right under [the contract]," the right to legal costs arises upon the breach of the contract), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 134 S. Ct. 773 (2014); *Lynch v. Sease*, No. 03-479, 2006 WL 1206472, at *4 (E.D. Ky. May 2, 2006) ("Unlike 'prevailing party' attorneys' fees that are collateral to the merits of an action and which do not accrue until the litigation is actually brought, attorneys' fees under the contract between the parties in this case arose upon breach of the agreement by Lynch.").[12]

On January 29, 2010, SupplyOne served Defendants with a Claim Notice for an Unliquidated Claim, notifying Defendants that SupplyOne intended to pursue indemnification for the attorneys' fees it was forced to incur as a result of Defendants' breach of Section 2.7 of the APA.  *See* Defs.' Reply Ex. A (Unliquidated Claim Notice).  As early as January 2010, SupplyOne was cognizant of its indemnification rights to attorneys' fees under the APA and had

---

[12] Like the fee claims in *Carolina Power* and *Lynch*, SupplyOne's indemnification claim does not depend on its having prevailed in the North Carolina Action.  The APA makes no mention of indemnification rights triggered by prevailing party status; instead, the contract specifies that the right to indemnification flows from the breach of the APA, which occurred in May 2009.  *See also United States Indus., Inc. v. Blake Const. Co., Inc.*, 765 F.2d 195, 208 (D.C. Cir. 1985) (applying res judicata to bar claim for attorneys' fees under indemnity contract and observing indemnity contract not dependent on prevailing party status).

14

manifested its intent to pursue those rights. Later, in its counterclaim, SupplyOne did in fact assert those indemnification rights, seeking from the North Carolina court an "award [of] damages in an amount to be determined at trial, [and an] award [of] attorneys['] fees, costs, and other professional expenses . . . pursuant to Section 10 of the APA." Defs.' Mot. to Dismiss Ex. 4, at 30. SupplyOne's decision to seek this relief in its counterclaim indicates that SupplyOne "clearly recognized the propriety of asserting claims for attorneys' fees in the [prior action] even if the amount of fees could not be determined (at least entirely) at the time of the filing." *United States Indus., Inc. v. Blake Constr. Co., Inc.*, 765 F.2d 195, 208 (D.C. Cir. 1985) (applying res judicata to bar successive action for attorneys' fees under a contract of indemnity). The mere fact that SupplyOne had not yet liquidated its claim or could not determine with specificity the amount of damages it believed it was owed does not defeat justiciability. *Cf. Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 22-23 (3d Cir. 1985) ("[N]either immediate liability for damages, nor a liquidation to the extent of an insurer's indemnification obligation, is necessary in this Circuit to establish a justiciable controversy."); *Diaz v. Indian Head, Inc.,* 686 F.2d 558, 563 (7th Cir. 1982) (holding res judicata barred second suit where claim could have been raised in first action, even where amount allegedly owing was not certain at the time of the first action).

Second, even if the indemnification claim was not ripe when originally pleaded, by requesting indemnification in its counterclaim in the North Carolina Action, SupplyOne preserved the issue for later resolution in the same action. Assuming arguendo that SupplyOne's claim did not ripen until July 2013, SupplyOne still could have sought attorneys' fees in the North Carolina Action via a post-trial motion because final judgment had not yet been entered at that time. A second action based on a previously asserted but unripe claim is only permissible if "the change in circumstances that cures the jurisdictional defect . . . occur[s] subsequent to the

prior litigation." *Park Lake Res. Ltd. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1137 (10th Cir. 2004). Here, the district court in North Carolina did not enter final judgment until September 26, 2013, and because the indemnification claim now before this Court was a component of the relief sought in SupplyOne's counterclaim in the North Carolina Action, SupplyOne could have, and was obligated to, petition the North Carolina court for a fee award prior to the entry of final judgment in that case.

SupplyOne maintains it could not have raised its indemnification claim post-trial because Federal Rule of Civil Procedure 54(d)(2) requires attorneys' fees to be sought by motion unless "the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2). SupplyOne contends that by operation of the contract, its sought-after fees are an element of damages that must be proved at trial, and because its indemnification claim only ripened after trial, SupplyOne could not have proved the claim during the trial in North Carolina. Even if SupplyOne could not have presented evidence of attorney fee–related damages during the merits trial,[13] however, Rule 54(d)(2) would not have necessarily foreclosed a post-trial fee

---

[13] There is another reason why it is questionable at best that SupplyOne was obligated by contract to wait until after the jury verdict to assert and/or prove its indemnification claim. Under Section 10.3 of the APA, a Liquidated Claim Notice must be sent "within 60 days after the matter giving rise to the claim becomes finally resolved." Here, the matter giving rise to the claim was the attorneys' fees SupplyOne incurred as a result of the North Carolina Action. Sending the Liquidated Claim Notice on July 1, 2013, *before* final judgment had been entered in the North Carolina Action, does not comply with Section 10.3 because SupplyOne continued to incur attorneys' fees as a result of the significant post-trial motion practice that took place after the jury verdict in the North Carolina Action. As noted above, Section 10.3 specifies no consequences for a failure to comply with its terms. Nevertheless, the Court raises this issue to note, incidentally, that SupplyOne's timing in issuing a Liquidated Claim Notice (shortly after trial and the same day it filed this action) appears to have been tactical, not contractual. Because final resolution of the matter giving rise to the indemnification claim was not necessary to pursue the indemnification claim, there was no legitimate contractual reason for failing to adduce evidence of entitlement to fees during the trial, notwithstanding the fact that SupplyOne had not yet served a Liquidated Claim Notice. *See Blake Constr. Co., Inc.*, 765 F.2d at 206 (noting that res judicata should apply to bar a subsequent suit for indemnification of attorneys' fees because,

petition. *See Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1039 (5th Cir. 2014) (noting there is "no bright-line rule that fees sought under the terms of '*any* contract' or '*all* contracts' must be considered damages.").[14]  Nor did Rule 54(d)(2) serve as a formal barrier preventing SupplyOne from raising its claim after trial in the first action. *See Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268, 1270 (11th Cir. 2000) (holding the failure to plead and prove entitlement to attorneys' fees during trial does not deprive a district court of subject matter jurisdiction to entertain a post-trial request for fees pursuant to Rule 54(d)(2)); *cf.* Fed. R. Civ. P. 54(c) ("Every . . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.").

Notwithstanding SupplyOne's arguments that it was jurisdictionally or procedurally foreclosed from asserting its indemnification claim in North Carolina, it appears SupplyOne had alternative reasons for choosing not to pursue the claim there—reasons entirely unrelated to ripeness or Rule 54(d)(2).  In the North Carolina Action, both parties relied on and cited to North Carolina law as governing the interpretation of the APA, despite a choice of law provision stating interpretation of the agreement shall be governed by Delaware law.  In part because the parties did not contest the issue, the district court, when resolving motions for summary judgment in the North Carolina Action, "determine[d] that the substantive law of North Carolina is properly applied." *Triad Packaging, Inc. v. SupplyOne, Inc.*, 925 F. Supp. 2d 774, 786 (W.D.N.C. 2013).  In Defendants' pretrial brief in the North Carolina Action, they argued that

---

inter alia, plaintiff had the opportunity to present evidence in support of its claim in the first action "but instead made a unilateral decision not to pursue the attorneys' fees claims" in that action).

[14] Whether the indemnification provision at issue here falls within the category of contractual fee provisions that do not require proof as an element of damages is another issue that could have been but was never litigated in the North Carolina Action because SupplyOne voluntarily abandoned its claim.

attorneys' fees pursuant to the indemnification provision are unavailable under North Carolina law. *See, e.g.*, *Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*, 545 S.E.2d 745, 752 (N.C. 2001) ("Even in the face of a carefully drafted contractual provision indemnifying a party for such attorney's fees as may be necessitated by a successful action on the contract itself, our courts have consistently refused to sustain such an award absent statutory authority therefor."). Instead of responding to and litigating this issue, SupplyOne sought attorneys' fees in the Eastern District of Pennsylvania—asking this Court apply Delaware, not North Carolina, law to the contract.

Facing the prospect of an adverse judgment on the merits and decamping to another court to avoid that result is precisely the kind of forum shopping and claim-splitting that a doctrine like res judicata is designed to prevent.[15] *See Plotner v. AT & T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) ("The fundamental policies underlying the doctrine of res judicata (or claim preclusion) are finality, judicial economy, preventing repetitive litigation and forum-shopping, and the interest in bringing litigation to an end." (citation and internal quotation marks omitted)); *Thomas M. McInnis & Assocs., Inc. v. Hall*, 349 S.E.2d 552, 556 (N.C. 1986) (noting that res judicata exists for the "purpose of . . . promoting judicial economy by preventing needless litigation"). The battle between these parties in North Carolina has spanned more than four

---

[15] While this Court recognizes that, as the defendant in the North Carolina Action, SupplyOne did not select the North Carolina forum, it still engaged in forum shopping by prematurely abandoning its indemnification claim. In litigating the indemnification issue it raised in its counterclaim, SupplyOne could have, but did not, seek the application of Delaware, not North Carolina, law to the APA. *See* APA § 12.7 (providing that this agreement "shall be construed and interpreted in accordance with the Laws of the State of Delaware"). Instead of arguing Delaware law applied, SupplyOne decided to bring the same claim in a different forum, because, as SupplyOne acknowledged during oral argument, in this Court it could rely on Delaware law and not have to "fight about whether or not North Carolina law precludes . . . us from seeking attorney's fees at all. So rather than have—add another hurdle to our claim, we can just avoid it by . . . arguing in a more convenient forum." Oral Arg. Tr. 15.

years. SupplyOne has provided no legitimate reason for opening another litigation front at this late stage, and instead has splintered its cause of action to avoid the possibility that North Carolina law substantively prohibits the relief it seeks. SupplyOne had many opportunities to ensure that all its claims would be heard on the merits in the North Carolina Action, and a "party who makes a unilateral, unauthorized determination not to go forward on issues that were properly in the case does so at its own peril." *Blake Constr. Co.*, 765 F.2d at 209-10. Accordingly, because the "judiciary and the parties in proceedings before the courts have a strong interest in the orderly process of litigation and in the finality of judgments," this Court will apply the claim preclusion doctrine to dismiss this case with prejudice. *Id.*

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.